# Steiner Bros. *v.* First National Bank of Birmingham.

## Garnishment Proceedings.

1. *Liability of garnishee; gift of stock held as collateral security.*
   On the contest of the answer of a garnishee, it was shown that the garnishee held 231 shares of stock as collateral security for a debt due it by the defendant, evidenced by a note, which authorized the garnishee to sell the stock, either at public or private sale, and become the purchaser of it. It was also agreed between the defendant and the garnishee that the latter would carry the indebtedness until the stock pledged was of sufficient value to pay it. Subsequently the garnishee took the stock in settlement of the defendant's indebtedness to it. Thereafter the garnishee sold 200 shares of the stock for more than enough to reimburse it for the amount of the defendant's indebtedness, with interest. After such sale, the garnishee delivered to the defendant this profit and the remaining 31 shares of stock. *Held*: That the taking of the stock in settlement of the defendant's indebtedness was, in effect, a sale by the defendant to the garnishee, which took away the plaintiff's right to condemn the defendant's interest therein, and that it did not affect the garnishee's liability that it gratuitously gave to the defendant the profit accruing from the transaction.

APPEAL from the City Court of Birmingham.
Tried before the Hon. W. W. WILKERSON.

On March 10, 1894, the appellants, Steiner Brothers, instituted a suit in the city court of Birmingham against William Berney to recover the sum of $2,000 alleged to be due by promissory note. On September 21, 1894, the plaintiff in said suit sued out an ancillary writ of attachment aga'nst said Berney, which was executed on September 22, 1894, by the sheriff serving a sheriff's garnishment on the First National Bank of Birmingham. On November 22, 1894, Steiner Brothers recovered a judgment against William Berney for $2,200. On May 4, 1897, said garnishment against the First National Bank, having been duly continued and kept alive for such time, the said garnishee filed its answer in said cause, in which it alleged that it was not indebted to the defendant, would not be indebted to him in the future under an existing contract, would not be liable to the defendant for the delivery of personal property, and that it had no money or effects of defendant in his possession or under its control. Said answer also contained the following allegations: "At the time of the service of the writ of garnishment in the above stated cause the said William Berney was indebted to the First National Bank of Birmingham in, to-wit, the sum of $4,389.90, which indebtedness was evidenced by note, and as collateral security to secure the payment of said indebtedness, said bank held in pledge 231 shares of stock in the Bessemer Land & Improvement Company, pledged by said Berney to said bank, and more than one year prior to the 4th day of June, 1895, and before the writ of garnishment was issued in the above stated cause, an agreement was made by and between said bank that said bank would carry the indebtedness of said Berney to it until the said stock pledged was of value sufficient to pay said indebtedness, at which time said bank was to take said stock in payment and satisfaction of said debt, and that in pursuance of said agreement on, to-wit, the 3d day of June, 1895, the said bank took the 231 shares of stock, as it had a right to do under the terms of said agreement, in payment of the indebtedness owing to said bank by said Berney, and cancelled said indebtedness with the assent and concurrence of said Berney, and thereupon the debt of the said Berney

became extinguished and the said stock became the property of the said bank." On May 25, 1897, the plaintiffs, Steiner Brothers, filed an affidavit of contest of the garnishee's answer, and issues were made up and tried between the plaintiffs and the garnishee on said contest.

The evidence in the case was practically without conflict, and showed the following facts: That in June, 1894, Berney was indebted to garnishee in the sum of $4,000 and interest, evidenced by a promissory note pledged to secure which was 231 shares of the capital stock of the Bessemer Land & Improvement Co., the property of Berney. That about said date garnishee agreed with Berney, that it would carry the indebtedness referred to until the stock pledged was of sufficient value to pay said indebtedness, at which time garnishee was to take same in payment and satisfaction of the debt. Subsequently to the making of said agreement and before the service of the garnishment, the note evidencing Berney's indebtedness having become due, Berney executed a new collateral note containing the following stipulation, after describing the stock pledged: "With full power and authority to sell, assign, and deliver the whole or any part thereof at any broker's board, at public or private sale, at the option of the holder of this note on the non-performance of this promise, without advertising or notice which is hereby expressly waived and upon such sale the holder hereof may purchase the whole or any part of said securities." On November 23d, 1894, the note to garnishee was again renewed by Berney with the same collateral by a note payable "on demand." All the notes taken by the garnishee for said indebtedness were in the same form. The request for the demand note executed May 27th, 1895, was made by letter in which garnishee stated that the Bessemer Land Co. stock was advancing and that if it was agreeable to Berney, garnishee would dispose of the stock if an opprotunity should be offered at a price sufficient to cancel Berney's obligation. The demand note was sent garnishee by Berney in a letter in response to garnishee's letter just mentioned. In this letter, Berney authorized garnishee to sell the stock whenever

garnishee's president thought best, and stated that he would like to have it held on a rising market and sold for more than enough to pay the debt. On May 28th, 1895, garnishee wrote Berney in reply to his letter acknowledging receipt of the demand note and stating that the sale of the stock would not be hastened, and that garnishee hoped that a considerable amount in excess of the debt might be realized for it. On June 3d, 1895, garnishee's officers decided "to take". the stock in settlement of the debt, its value at that time being about the amount of the debt, and on that day wrote Berney that garnishee had "used" the stock to pay Berney's note and asked for his approval of the action. On June 4th, Berney wrote garnishee expressing his approval of the transaction.

On June 5th the garnishee sold 100 shares of the stock for $2,150 net, and on June 14th garnishee sold 100 shares of the stock for $2,425.50 net, which paid Berney's debt, and left a surplus of $18.50 and 31 shares of stock.

After the last sale of stock, garnishee sent by mail to Berney the surplus $18.50 and the 31 shares of stock remaining unsold, in a letter accompanied by a statement showing the amount of stock sold and the price received for the same. No communication other than the letters mentioned passed between the garnishee and Berney between May 27th and June 14th, 1895.

It was admitted as one of the facts in said cause that the stock was worth $22.00 per share on June 5th, 1895, and $25.00 per share on June 14th, 1895.

A few days after the bank had sold the second block of stock, acting upon suggestions of one of its officers, it was decided that inasmuch as the bank had realized enough from the stock sold to refund to it the amount with interest that had been loaned to Berney, that it would return to Berney the $18.15 and a certificate of 31 shares of the stock. This was done nothwithstanding the stock had been previously taken in payment of the indebtedness of Berney.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment in favor of the garni-

shee and ordered the garnishee discharged. To the ren-
dition of this judgment the plaintiff duly excepted. The
plaintiff appeals and assigns as error the rendition of
judgment discharging the garnishee.

RUDULPH & HUDDLESTON, for appellant.—The ser-
vice of a garnishment creates a line on the debt on de-
mand owing from and on the effects and property in the
hands of the garnishee, which is incapable of impair-
ment by any arrangement or transaction between the
defendant and the garnishee or by any act of either.
*White v. Simpson*, 107 Ala. 386; 8 Amer. & Eng. Encyc.
Law, (1st ed.), 1198.

Where a pledgee sells collaterals at an unauthorized
sale and becomes himself the purchaser at such sale, the
relation between him and the pledgor is not dissolved
thereby.—*Sharpe v. National Bank of Birmingham*, 87
Ala. 644; *Terry v. Birmingham National Bank*, 93 Ala.
599; 18 Amer. & Eng. Encyc. of Law, (1st ed.), 673;
*Leahy v. Lobdell*, 54 U. S. App. 35; 43 L. R. A. 737,
note.

In order for a sale of collaterals under the power con-
tained in the contract of pledge to be valid, it is neces-
sary that the terms of the power be strictly complied
with.—Colebrook, Collateral Securities, §§ 118, 121; 18
Amer. & Eng. Encyc. of Law, (1st ed.), 673, 717; 43 L.
R. A. 737, note. Where a pledgee is given the right to
sell collaterals at a private sale, he must get the best
price he can, otherwise the sale is invalid.—18 Am. &
Eng. Encyc. Law, (1st ed.), 717; *Guinzbery v. H. W.
Downs Co.*, 165 Mass. 467; 43 L. R. A. 737, note; *Nab-
ring v. Bank of Mobile*, 58 Ala. 204.

Shares of stock in a corporation in the hands of a
third person may be subjected by process of garnish-
ment.—Code of 1896, §§ 540, 1261, 1265; *Security Assn.
v. Weems*, 69 Ala. 584; *Old Second National Bank v.
Williams*, 112 Mich. 564; *Puget Sound National Bank
v. Mather*, 60 Minn. 362; *Edwards v. Beugnot*, 7 Cal.
162; *Burgess v. Capes*, 32 Ill. App. 372; *Banning v.
Sibley*, 3 Minn. 389; *Kenosha Stove Co. v. Shedd*, 82
Iowa, 540; *National Bank v. Chase*, 71 Iowa, 120; *Gil-
lette v. Cooper*, 48 Kan. 632; *Elser v. Kommel*, 98 Mich.

74; *Leighton v. Heagerty*, 21 Minn. 42; *McBride v. Floyd*, 2 Bailey L. (S. C.), 209; *Cooms v. Davis*, 2 Wash. 466; *Storm v. Cotzhausen*, 38 Wis. 144; *State v. Coyle*, 41 Wis. 270; *Wayland University v. Boorman*, 56 Wis. 660; *La Crosse Nat. Bank v. Wilson*, 74 Wis. 391; *Smith v. Traders Nat. Bank*, 74 Tex. 457; *Norton v. Norton*, 1 West 524.

E. J. SMYER and WALKER, PORTER & WALKER, *contra.* Berney could not have maintained an action against the bank. The bank owed him nothing, and was under no obligation to deliver the stock to him, and as Berney could not maintain an action the garnishing creditor could not.—*Harris v. Miller*, 71 Ala. 32; *Nabring v. Bank*, 58 Ala. 206; *White v. Rankin*, 90 Ala. 542. The stock in the corporation can not be reached by garnishment.—*Abell v. Insurance Co.*, 98 Ala. 385; *Kennedy v. Railway Co.*, 93 Ala. 494.

It is true that Berney could have waived the tort and sued in assumpsit for the value of the stock converted, but this right of election rests in Berney alone, and gives no right to the plaintiff to hold the defendant liable for the value of the stock.—See *National Commercial Bank v. Miller*, 77 Ala. 175; *Cunningham & Son v. Baker*, 104 Ala. 172.

If the stock could not be reached by process of garnishment, then the transaction by the bank in no way could prejudice the plaintiff. It is not all kinds of personal property that can be reached by process of garnishment. It is only such personal property as is tangible and corporeal and can be delivered on demand after rendition of judgment.—*Hurst v. Home Protection Fire Ins. Co.*, 81 Ala. 174; *Craft v. Summersell*, 93 Ala. 431; *Nicrosi v. Irvine*, 102 Ala. 650; *Teague v. LeGrand*, 85 Ala. 495.

TYSON, J.—Prior to the service of the writ of garnishment, the defendant had pledged with the garnishee 231 shares of stock in the Bessemer Land and Improvement Company as collateral security for a debt owing by him to the garnishee. This debt and the pledge was evidenced by a written contract which authorized the

garnishee to sell the stock either at public or private sale and to become the purchaser of it. It was also agreed in June, 1894, between Berney, the defendant, and the bank, the garnishee, that the bank would carry his indebtedness of $4,000 until the stock pledged was of value sufficient to pay it.

After the service of the writ of garnishment the contract evidencing the debt and pledged was renewed several times. When the pledge was made the stock was only worth about $10 per share, or $2,310, which continued to be its value until May, 1895, when the stock advanced in price. On June 3, 1895, as the result of a conference between the officers of the bank, it was decided that the bank would take the stock in settlement of Berney's indebtedness to it. This was done and Berney's contract was cancelled and surrendered to him. The effect of this transaction was to invest the entire title to the stock in the bank and to divest Berney of all interest, right or title in it. It was in effect a sale by Berney to the bank of the stock. It is not pretended that the price paid to Berney was not fair and adequate.

It is true that shortly thereafter the bank sold 200 shares of the stock for more than enough to reimburse it for the price it had paid Berney, realizing as a profit in the transaction $18.15 in money and thirty-one shares. This profit, it is needless to say, was the property of the bank and in no wise concerned Berney or the plaintiffs. Berney's rights to the stock or any portion of it had been completely divested by the sale. His interest having been taken away, of necessity the plaintiff's right to condemn that interest was gone also.

It is of no consequence that the officers of the bank gratuitously gave to Berney this profit. The bank was under no legal or moral obligation to do so. Being under no legal obligation to return to Berney this profit, the plaintiffs cannot, of course, condemn it to the satisfaction of their writ.

The judgment is affirmed.